**No. 24-4737**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

MG PREMIUM LTD, a limited liability company organized
under the laws of the Republic of Cyprus,

*Plaintiff/Ctr-Defendant-Appellee*,

vs.

AMRIT KUMAR, DBA Goodporn.to

*Defendants/Ctr-Claimant -Appellant*,
and
EMILIE BRUNN, et al.,

*Defendants*.

_____

**Appeal from the U.S. District Court for the Central District of California
Case No. 2:21-cv-08533-MCS-SP
United States District Court Judge Mark C. Scarsi**

_____

**OPPOSITION OF APPELLEE / PLAINTIFF MG PREMIUM LTD TO
DEFENDANT / APPELLANT'S MOTION TO PROCEED IN FORMA
PAUPERIS ON APPEAL**

_____

KARISH & BJORGUM, PC
A. Eric Bjorgum (SBN 198392)
Marc Karish (SBN 205440)
119 E. Union St., Suite B
Pasadena, California  91101
*Counsel for Plaintiff/Ctr-Defendant-Appellee*

## <u>RESPONSE TO APPELLANT'S APPLICATION TO PROCEED IN</u>

## <u>FORMA PAUPERIS</u>

Defendant Amrit filed his motion to proceed in forma pauperis on August 22, 2024 (the "Motion"). In the Motion Kumar blatantly misrepresents the history of this matter and his ability to pay to pursue this appeal.

In the matter below, Kumar and his co-defendants were ordered to pay multiple sanctions. Kumar has stated in filings that he was willing to pay the sanctions, as well as attorneys fees and costs. He did not complain that he was unable. *See* Defendant's Opposition to Plaintiff's Motion Alter or Amend Judgment (Dist. Ct. Dkt. No 287, p. 4 at lns. 10 – 26), attached as Exhibit A to the Declaration of Eric Bjorgum ("Bjorgum Decl.").

Somehow, Kumar has gotten through years of federal litigation without having to appear once in Court or even speak with opposing counsel. In the process, he has failed to appear at multiple court-ordered depositions (after demanding interpreters) and was subject to terminating sanctions. (Dkt. No. 269). He was also subject to default for failing to appear at a final pretrial conference. Finally, default judgment was entered against him, and he was ordered to pay 2,157,000 in damages and 446,740 in fees. (Bjorgum Decl., Exh. B.) He was also ordered to pay $12,768.97 in costs. (Dkt. No. 292.)

He repeatedly filed motions for reconsideration. In one scathing opinion following Kumar's ex parte application to have the default lifted (attached as Exh. C hereto) the District Court noted that "This page-long recitation of months of Defendant's failure to abide by the Court's orders clearly shows that Defendant is at fault in creating any crisis he finds himself in as to the independent ground for entry of default against him." (Dist. Ct. Dkt. No. 273, attached as Exh. C to the Bjorgum Decl.)

Despite all of this, Kumar is claiming poverty. Indeed, his own application betrays the reality here: he is not destitute. His asset disclosures claim he owns "arts" valued at "$50,000,000." (9th Cir. Dkt. No. 3 at pdf page 40.)

For the foregoing reasons Kumar's Motion to Proceed In Forma Pauperis should be denied.

Respectfully submitted,


/s/ A. Eric Bjorgum
A. Eric Bjorgum

## DECLARATION OF A. ERIC BJORGUM

I, A. Eric Bjorgum, under penalty of perjury of the laws of the United States,

declare and state as follows:

1.     I am a partner at Karish & Bjorgum, PC, attorneys for Plaintiff in the

above-entitled matter. I am a Citizen of the United States, over the age of 18 years

old, make this declaration based upon personal knowledge and, if called to testify

could and would testify competently to the facts set forth herein. I submit this

Declaration in Support of Appellee's Opposition to Appellant's Motion to Proceed

In Forma Pauperis.

2.     Attached hereto as Exhibit A is a true and correct copy of Kumar's

Opposition to the Motion to Alter or Amend Judgment in this matter (Dist. Ct.

Dkt. No. 287).

3.     Attached hereto as Exhibit B is a true and correct copy of the Default

Judgment (Dkt. No. 279) entered by the District Court in this matter.

4.     Attached hereto as Exhibit C is a true and correct copy of the District

Court's Order Denying Kumar's Ex Parte Application to Vacate the Default (Dkt.

No. 273 in the Dist. Ct.) in this matter. In this Order, the District Court summarizes

Kumar's numerous violations of Court Orders.

I Declare under penalty of perjury under the laws of the United States of America that the
foregoing is true and correct.

/s/ A. Eric Bjorgum        Dated: Dept. 3, 2024
A. Eric Bjorgum          Pasadena, CA

# Exhibit A

Amrit Kumar

601 6th Floor, Rupa Solitare

Millennium Business Park, Plot No. A-1

Mahape, Mumbai

Maharashtra-400710, India

Email: amritkum@proton.me

Defendant pro se

```
┌─────────────────────────────┐
│            FILED            │
│  CLERK, U.S. DISTRICT COURT │
│                             │
│          3/11/24           │
│                             │
│ CENTRAL DISTRICT OF CALIFORNIA │
│  BY: ____eee____ DEPUTY     │
└─────────────────────────────┘
```

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

MG PREMIUM LTD, a limited liability, company organized under the laws of the Republic of Cyprus,

        Plaintiff,

  vs.

AMRIT KUMAR

, d/b/a GOODPORN.TO,

        Defendant

Case No.: 2:21-cv-08533-MCS-SPx

**DEFENDANT AMRIT KUMAR'S OPPOSITION TO PLAINTIFF'S MOTION TO ALTER OR AMEND THE DEFAULT JUDGMENT**

1

## MEMORANDUM OF POINTS AND AUTHORITIES

Defendant Amrit Kumar ("Kumar") hereby opposes Plaintiff MG Premium Ltd's ("Plaintiff") Motion to Alter or Amend the Default Judgment (the "Motion"). The Motion should be denied because Plaintiff has failed to meet the high standard for amending a judgment under Federal Rule of Civil Procedure 59(e) and Local Rule 7-18.

Plaintiff seeks to fundamentally change the Court's well-reasoned judgment by adding new theories of liability, expanding the scope of relief, and introducing untimely evidence. However, Rule 59(e) is not a vehicle for relitigating old issues, presenting new arguments that could have been raised earlier, or introducing evidence that was previously available. See Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008). Nor is it a substitute for an appeal. See Blystone v. Horn, 664 F.3d 397, 415 (3d Cir. 2011). Rather, the rule offers an "extraordinary remedy" to be used sparingly, only when necessary to correct a clear error of law or prevent manifest injustice. See Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011).

Plaintiff has not come close to making this showing. The Court's assessment of the evidence and arguments, as presented by Plaintiff, was conducted with due consideration, leading to a decision that was appropriate within the context of those specific submissions. Plaintiff's disagreement with the Court's conclusions does not justify the exceptional step of amending the judgment. Nor does Plaintiff's submission of new evidence that it could have presented earlier, but chose not to. The Court should reject Plaintiff's improper attempt to get a second bite at the apple.

In addition to failing to satisfy the legal standard for amending a judgment, Plaintiff's Motion suffers from numerous procedural and substantive defects that

independently warrant its denial. Plaintiff failed to meet and confer with Kumar before filing the Motion, failed to properly serve Kumar with notice of the Motion, and engaged in harassing and abusive litigation tactics. Plaintiff also misstates key facts about Kumar's compliance with the Court's orders and his good faith efforts to pay the judgment amounts.

On the merits, Plaintiff's Motion seeks grossly overbroad and unjustified relief that would threaten the functioning of the Internet, undermine the DMCA, and misuse the Court's authority to eliminate a lawful competitor. The Court should reject Plaintiff's overreaching demands to expand the monetary and injunctive relief beyond what the law and facts support. Plaintiff's own unclean hands also weigh heavily against any exercise of the Court's equitable discretion in its favor.

For all these reasons, as further detailed below, the Court should deny Plaintiff's Motion to Alter or Amend the Default Judgment. The judgment should stand as originally entered.

# I. INTRODUCTION

The Court should deny Plaintiff's Motion because it fails to meet the high standard for altering or amending a judgment under Federal Rule of Civil Procedure 59(e) or for reconsideration under Local Rule 7-18.

Plaintiff has not shown any manifest errors of law or fact, newly discovered evidence, manifest injustice, or intervening change in controlling law that would warrant disturbing the Court's well-reasoned default judgment order. The Court properly exercised its discretion in awarding statutory damages and attorneys' fees, and denying injunctive relief based on the record before it. Plaintiff's belated

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

attempt to introduce new evidence and arguments that it could have presented earlier does not justify amending the judgment at this late stage.

In addition to these legal shortcomings, Plaintiff's Motion suffers from several other critical defects that require its denial:

First, Plaintiff failed to meet and confer with Kumar before filing the Motion, and failed to properly serve Kumar with notice of the Motion, in violation of the Court's rules. Plaintiff has also engaged in harassing conduct by spamming Kumar's email address, rendering it practically unusable for communicating with the Court.

Second, contrary to Plaintiff's assertions, Kumar has complied and will continue to comply with the Court's orders. Kumar has removed all 1,483 videos specified in Exhibit A to Plaintiff's First Amended Complaint, as Plaintiff itself acknowledges. Kumar has also repeatedly requested Plaintiff's payment information in order to pay the court-ordered sanctions, but Plaintiff's counsel has refused to provide it. Kumar cannot be faulted for not paying amounts owed when Plaintiff will not provide the necessary information to do so.

Third, the relief Plaintiff seeks - essentially an order allowing it to seize Kumar's domain name goodporn.to - is unjustified and reveals Plaintiff's true motive, which is to hijack Kumar's successful website to eliminate competition with Plaintiff's own websites like pornhub.com. Granting this unprecedented relief would set a dangerous precedent that any copyright claim against a website owner could result in seizure of their domain name. This would put at risk the domain names of major service providers like Google and YouTube based on any copyright complaint, and would allow Plaintiff to abuse the legal process to steal valuable domain names from owners who lack the resources to defend themselves. The Court should not endorse this overreaching conduct.

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

Fourth, Plaintiff failed to utilize the clear content removal procedures on Kumar's website before filing suit. Similar to major sites like YouTube, Kumar's website has a straightforward process to request removal of allegedly infringing content. Plaintiff never availed itself of this process before burdening the Court with litigation.

Fifth, Plaintiff's purported damage calculations are unsupported and contradicted by its own evidence. Plaintiff assumes without evidence that 1 out of every 100 visitors to goodporn.to would become a paying member of Plaintiff's websites - a far-fetched assumption that Plaintiff, as the party seeking damages, bears the burden of proving. Plaintiff's traffic numbers from Similarweb are also inconsistent and unreliable, varying by a factor of more than three.

For all these reasons, as further detailed below, the Court should deny Plaintiff's Motion to Alter or Amend the Default Judgment. The motion should be denied.


## II. LEGAL STANDARD

Motions to alter or amend a judgment under Rule 59(e) are disfavored and should be granted sparingly, only in highly unusual circumstances. McDowell v. Calderon, 197 F.3d 1253, 1255 (9th Cir. 1999). Amending a judgment after its entry is an "extraordinary remedy" that should be used only when necessary to correct manifest errors of law or fact, newly discovered or previously unavailable evidence, manifest injustice, or an intervening change in controlling law. Allstate Ins. Co. v. Herron, 634 F.3d 1101, 1111 (9th Cir. 2011). Rule 59(e) may not be used to relitigate old matters or raise arguments that could have been made before entry of judgment. Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008).

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

Similarly, under Local Rule 7-18, reconsideration is appropriate only if the movant shows (a) a material difference in fact or law that could not have been known through reasonable diligence when the order was entered; (b) emergence of new material facts or change of law after the order; or (c) a manifest failure by the Court to consider material facts before entering the order.

Plaintiff has not made the required showing under either standard to disturb the judgment. As explained below, Plaintiff's Motion improperly seeks to relitigate issues already decided, introduce evidence and arguments that could have been raised earlier, and obtain relief that is procedurally barred and substantively unwarranted. The Court should therefore deny the Motion.

## III. PLAINTIFF'S MOTION SHOULD BE DENIED FOR FAILURE TO COMPLY WITH MEET AND CONFER AND SERVICE REQUIREMENTS

As a threshold matter, Plaintiff's Motion suffers from fatal procedural defects that require its denial. First, Plaintiff failed to comply with Local Rule 7-3, which mandates that counsel meet and confer at least seven days prior to the filing of any motion. L.R. 7-3. The parties must thoroughly discuss the substance of the contemplated motion and any potential resolution. Id. A court may deny a motion solely for failure to meet and confer. See Singer v. Live Nation Worldwide, Inc., 2012 WL 123146, at *2 (C.D. Cal. Jan. 13, 2012).

Here, Plaintiff filed its Motion without any attempt to meet and confer with Kumar beforehand. Plaintiff does not claim that it satisfied the conference requirement, nor could it. This failure alone warrants denial of the Motion.

Second, Plaintiff failed to properly serve Kumar with notice of the Motion. Kumar never received formal notice of the Motion from Plaintiff, either by mail or email. This violates Federal Rule of Civil Procedure 5, which requires service of

all motions and other papers on opposing parties. Plaintiff's failure to serve the Motion prejudices Kumar's ability to respond. On this ground as well, the Motion should be denied. See the case of James Douglas Williams, Jr. v. County of Los Angeles, et al., No. 18-55379, D.C. No. 2:17-cv-06130-MWF-KS, United States Court of Appeals for the Ninth Circuit, where the court granted a motion and dismissed an action without prejudice based on the plaintiff's failure to timely or properly serve any of the defendants (denying motion for failure to serve opposing party).

Making matters worse, Plaintiff has engaged in harassing conduct by spamming Kumar's email address with hundreds of irrelevant messages, hindering his ability to communicate with the Court. Kumar's email is his primary means of receiving court filings and orders. By inundating this email address with spam, Plaintiff has burdened Kumar's participation in these proceedings. The Court should not condone such abusive tactics. 'Exhibit A' shows the spam sent to Kumar.

In short, Plaintiff's failure to comply with basic meet and confer and service requirements, coupled with its harassment of Kumar, requires denial of the Motion. The Court should reject Plaintiff's attempt to seek additional relief without following the proper procedures.

## IV. KUMAR HAS COMPLIED WITH THE COURT'S ORDERS AND JUDGMENT

Plaintiff's contention that Kumar has disregarded the Court's orders is demonstrably false. In fact, Kumar has diligently complied with the Court's directives and the judgment in this case, removing the infringing content at issue and making every effort to pay the amounts owed.

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

First, as Plaintiff acknowledges in its Motion, Kumar has removed all 1,483 videos that were the subject of Plaintiff's copyright claims in this case. These were the works identified in Exhibit A to Plaintiff's First Amended Complaint. By taking down these videos, Kumar has complied with the key requirement of the Court's judgment.

Second, Kumar has repeatedly tried to pay the court-ordered sanctions and judgment amounts to Plaintiff but has been stymied by Plaintiff's refusal to provide payment instructions. Despite multiple requests to Plaintiff's counsel for payment information for MG Premium Ltd, the named Plaintiff, Kumar received irrelevant payment details instead. When questioned about the failure to provide MG Premium Ltd's payment information, Plaintiff's counsel cited high tensions between the parties as a reason, which is unrelated to the provision of necessary payment details. Kumar cannot send payment without knowing where to direct it and is committed to complying with the monetary aspects of the Court's judgment. Sending payment to an entity other than MG Premium Ltd would contravene the court's directive, placing Kumar at risk of violating the order and potentially being forced to double pay if he sends to anyone except the plaintiff. The responsibility for any non-payment lies with Plaintiff, not Kumar.

Plaintiff's insinuations of non-compliance are also belied by the fact that Kumar is currently pursuing an appeal of the Court's orders. Kumar has a pending appeal before the Ninth Circuit. The filing of an appeal does not relieve Kumar of his obligations under the judgment, and he has not treated it that way, as shown above. But it does confirm that Kumar takes this matter seriously and is availing himself of all available legal options. Plaintiff's suggestion that Kumar is flouting the judgment is simply false.

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

In sum, the record shows that Kumar has made every effort to comply with the Court's orders and judgment, notwithstanding Plaintiff's lack of cooperation regarding payment. Kumar has taken down the infringing videos and tried to pay the amounts owed. Plaintiff's contrary arguments are baseless.

## V. PLAINTIFF'S REQUESTED RELIEF IS IMPROPER AND ABUSIVE

Plaintiff's request for transfer of Kumar's goodporn.to domain name is improper and abusive. While Plaintiff did seek this relief in its First Amended Complaint, it was in the context of the 1,483 specific works at issue. Now, Plaintiff seeks to expand the scope of the domain transfer to gain control over Kumar's entire website, beyond just the works in suit. This is a drastic overreach.

Plaintiff has cited no binding or persuasive authority for the proposition that a court can order a defendant to hand over its entire domain name and website to a plaintiff as a remedy for copyright infringement, especially where the defendant has already complied with the judgment by removing the accused content. Such a remedy would be grossly disproportionate and amount to an unjustified windfall.

Granting Plaintiff's request would set a dangerous precedent, putting all websites at risk of losing their domain names over any copyright claim, no matter how small. This would invite abuse and threaten the functioning of the Internet, as aggressive copyright holders could easily seize competitors' domains. Congress did not intend this result in enacting the Copyright Act.

Plaintiff's true motive is clear: it wants to eliminate goodporn.to as a competitor to its own websites. The Court should not condone this misuse of the judicial process to achieve anticompetitive goals.

Plaintiff's attempt to implicate third-party sites like goodporn.se and GPstatus.org is also improper, as those sites are not parties to this case and were

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

not mentioned in the relief sought in the First Amended Complaint (FAC). This overreach violates the principle that amended judgments cannot extend to grant relief beyond what was initially specified, as outlined in Federal Rule of Civil Procedure 54(c), which restricts judgments to the relief demanded in the pleadings. Accepting Plaintiff's overbroad theory of liability would unjustly threaten countless third parties and stifle online speech.

Given Plaintiff's history of abusive litigation tactics and unclean hands, the Court should be especially wary of endorsing its extraordinary request to seize Kumar's domain name. The Court should reject this baseless and unprecedented demand.

## VI. PLAINTIFF FAILED TO UTILIZE KUMAR'S CONTENT REMOVAL PROCEDURES

Plaintiff's Motion also conveniently ignores that Kumar's website has a clear and well-established procedure for copyright owners to request removal of allegedly infringing content - a procedure Plaintiff never attempted to invoke before filing this lawsuit.

As shown in Exhibit B, the goodporn.to website features a prominent link on every page directing copyright owners to a "Content Removal" form. This form allows any copyright holder to easily notify the website of allegedly infringing material and request its removal. The form is not hidden in fine print, but rather is clearly displayed in the footer of the website, accessible from every page. Kumar has implemented this industry-standard process to facilitate removal of any infringing content from his site.

Plaintiff, however, never submitted any content removal requests to Kumar before filing this case. Kumar's records show no removal requests from Plaintiff or

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

any of its agents. This is despite Plaintiff's contention that its copyrighted works have been displayed on goodporn.to for an extended period. Had Plaintiff simply utilized the content removal form on Kumar's site, it could have avoided this motion and the burden it has placed on the Court.

Plaintiff's failure to use Kumar's content removal process is telling. It suggests that Plaintiff's true goal in bringing this case was not to remove its works from Kumar's site, but rather to seize Kumar's domain and eliminate a competitor. Plaintiff seemingly had no interest in working cooperatively with Kumar to address any copyright concerns, but rather wanted to use the Court to achieve its business objectives. The Court should not countenance this misuse of the litigation process.

At a minimum, Plaintiff's election to forego Kumar's removal procedures undermines its claim of irreparable harm. Any harm Plaintiff suffered from the availability of its works on goodporn.to could have been avoided had Plaintiff simply filled out the content removal form. Plaintiff's failure to do so suggests the lack of any true emergency or ongoing injury. The Court should reject Plaintiff's crocodile tears about the impact of the allegedly infringing content it took no steps to remove.

In sum, Kumar's website has a clear and accessible procedure for removing allegedly infringing content - a procedure Plaintiff ignored in favor of filing this motion. The Court should not reward Plaintiff's attempt to bypass cooperative content removal processes in order to gain an upper hand on a competitor. Plaintiff's failure to use the tools at its disposal undercuts any claim of irreparable harm and confirms the pretextual nature of this suit.

## VII. PLAINTIFF'S DAMAGE THEORIES ARE UNSUPPORTED AND SPECULATIVE

11

Plaintiff's theories about the purported damages it has suffered are speculative, unsupported, and contradicted by its own evidence. The Court should reject Plaintiff's attempts to inflate its damages through far-fetched assertions.

First, Plaintiff assumes, with no supporting evidence, that a full 1% of visitors to goodporn.to - 1 out of every 100 visitors - would have become paying subscribers to Plaintiff's websites if not for the allegedly infringing content. This assumption is, to put it charitably, far-fetched. As Kumar explains, the actual conversion rate of free viewers to paid subscribers in the adult entertainment industry is far lower, ranging from 1 in 25,000 to 1 in 100,000. Kumar would know, as the owner of a site that competes with Plaintiff's. Plaintiff, as the party seeking damages, bears the burden of proving that its proffered conversion rate is accurate. See Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) (copyright plaintiff bears burden of proving damages). Plaintiff offers no evidence to carry that burden, resting instead on naked speculation. The Court should reject Plaintiff's unsupported damages theory. See Anheuser-Busch, Inc. v. Natural Beverage Distribs., 69 F.3d 337, 345 (9th Cir. 1995) (damages based on speculation are improper).

Second, Plaintiff's assertions about the traffic to goodporn.to are inconsistent and unreliable. Plaintiff first claims, based on data from SimilarWeb, that goodporn.to received 17.91 million visitors between November and December 2023. Just a few sentences later, however, Plaintiff changes its story and says the site received only 5.7 million visitors per month - less than a third of its original claim. These numbers cannot be reconciled. The wild variation shows that Plaintiff's traffic estimates are unreliable. As Kumar explains, SimilarWeb does not have access to goodporn.to's actual server data and traffic numbers. Its estimates are just that - estimates, based on undisclosed and unverified methodologies. The

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

Court should place no weight on Plaintiff's inconsistent, unsubstantiated claims about goodporn.to's traffic.

Plaintiff's damage theories also ignore that Kumar has already removed the 1,483 videos that were the subject of Plaintiff's claims in this case. Any alleged damages from those videos have thus ceased. Plaintiff's request for an astronomical damages award based on videos that are no longer even available on Kumar's site makes no sense and finds no support in the law.

In sum, Plaintiff's damages theories are built on a house of cards. Plaintiff assumes without evidence that 1% of visitors to goodporn.to would have become paying customers of Plaintiff's websites, a far-fetched assertion that Kumar's real-world experience running a similar website disproves. Plaintiff's claims about the traffic to goodporn.to are also all over the map, fluctuating by a factor of three from one paragraph to the next. And Plaintiff ignores that any damages ceased once Kumar removed the accused videos from his site. The Court should reject Plaintiff's unsupported, inflated, and speculative damages theories.

## VIII. PLAINTIFF'S EVIDENCE DOES NOT JUSTIFY AMENDING THE JUDGMENT

In addition to the foregoing points, Plaintiff's proffered evidence in support of its Motion does not warrant disturbing the Court's judgment. Plaintiff submits various declarations and exhibits, but none of them demonstrate any manifest error of fact or law, newly discovered evidence, or other basis for amending the judgment under Rule 59(e) or Local Rule 7-18.

The Declaration of Anis Baba contains several flaws and inconsistencies. First, Baba's claim that Plaintiff invested $2 million in registering copyrights is irrelevant to the issues at hand and appears to be an attempt to portray Plaintiff in a

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

positive light, despite the company's history of unethical business practices and involvement in litigation related to child pornography and rape, as noted in the Serena Fleites et al v. MindGeek S.A.R.L. et al case.

Second, the traffic data Baba cites from SimilarWeb is unreliable and contradictory. In one instance, the declaration states that goodporn.to received 17.91 million visitors, but later changes this figure to 5.7 million monthly visitors. These inconsistencies undermine the credibility of Plaintiff's assertions about the alleged damages caused by the claimed infringement.

Third, Baba's assumptions about the conversion rate of visitors to paying subscribers are purely speculative and unsupported by evidence. As Kumar explains, the actual conversion rate in the adult entertainment industry is much lower, ranging from 1 in 25,000 to 1 in 100,000. Plaintiff bears the burden of proving its claimed conversion rate, which it has failed to do.

The Declaration of Jason Tucker also fails to provide a basis for amending the judgment. Much of Tucker's declaration reads like a self-promotional advertisement, touting his purported accomplishments and associations with well-known companies. These claims are irrelevant and do not lend any credence to Plaintiff's arguments.

Moreover, Tucker's assertions about the number of infringing videos on goodporn.to are inconsistent and ever-changing. Tucker also admits he lacks direct knowledge of goodporn.to's server data and traffic, and instead relies on third-party estimates from SimilarWeb, which are unreliable for the reasons discussed above.

Importantly, the screenshots Tucker provides in Exhibit A do not match the titles of the registered works, calling into question whether the videos are in fact copies of Plaintiff's copyrighted material. Just because two videos share similar titles or keywords does not necessarily mean they are the same work, given the

limited number of commonly used terms in adult video titles. Plaintiff has not met its burden of showing that the videos on goodporn.to are indeed its registered works.

Tucker's reliance on screenshots from Brazzers.com in Exhibits E-I is also misplaced. Plaintiff has not established that it actually owns the Brazzers.com website or its content. Before Plaintiff can cite material from Brazzers.com as evidence of its own works, it must first prove that it has a valid ownership interest in that site. Merely asserting that Brazzers.com is one of Plaintiff's brands is insufficient without actual evidence of Plaintiff's ownership and control over the site and its content.

The various screenshots attached to Plaintiff's declarations also fail to justify altering the judgment. At most, these materials suggest there may be additional allegedly infringing content on goodporn.to beyond the 1,483 videos addressed in this case. However, Plaintiff was aware of the full scope of the accused material during this litigation, yet chose to limit its claims to the 1,483 specific works identified in its complaint. Plaintiff cannot now use Rule 59(e) to improperly expand the scope of the case after the fact to encompass additional works that it did not previously put at issue.

Furthermore, to the extent Plaintiff's declarations raise new allegations of infringement, these assertions are vague, speculative, and unsubstantiated. The mere presence of Plaintiff's claimed trademarks or logos on goodporn.to, for instance, does not in itself constitute infringement, especially given the nature of Kumar's website as a service provider tube website. Plaintiff has not demonstrated that Kumar lacked any colorable fair use defense or other legal justification for the display of Plaintiff's claimed marks. Such fact-intensive issues are not suitable for resolution on a Rule 59(e) motion, but would instead require a new lawsuit with a

full opportunity for discovery and briefing. Plaintiff's attempt to inject new infringement claims into its Motion to Amend the Judgment is procedurally improper and prejudicial to Kumar.

Beyond the shortcomings in Plaintiff's evidence, Plaintiff's own unclean hands weigh strongly against disturbing the judgment in its favor. As detailed above, Plaintiff has engaged in a pattern of abusive copyright litigation against foreign website owners, improperly seeking to seize their valuable domain names through coercive default judgments. See MG Premium Ltd v. Does 1-20, No. 3:21-cv-05733, (W.D. Wash. Filed Oct. 4, 2021). Plaintiff's counsel has also committed misconduct in this very case by refusing to provide payment information to Kumar and by subjecting Kumar to a barrage of harassing emails. This bad faith conduct undermines the credibility of Plaintiff's evidence and arguments, and should disqualify Plaintiff from receiving the extraordinary relief it seeks in its Motion.

In sum, nothing in Plaintiff's evidentiary submissions comes close to justifying the drastic step of amending the judgment. Plaintiff's declarations are filled with conclusory assertions, contradictory data, and irrelevant self-promotion. Plaintiff's exhibits are speculative and fail to concretely establish any new actionable infringement beyond what was previously alleged. And Plaintiff's unclean hands render it undeserving of any further relief from this Court. The Court should reject Plaintiff's Motion and allow its original judgment to stand.

## IX. PLAINTIFF'S CLAIMED COSTS ARE UNSUBSTANTIATED AND UNSUPPORTED

Plaintiff's Application to the Clerk to Tax Costs (Dkt. No. 282) is procedurally improper and should be denied outright. As a threshold matter, Plaintiff failed to serve Kumar with a copy of the Application, depriving him of

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

proper notice and an opportunity to respond. This violates fundamental principles of due process and fairness.

Moreover, under Local Rule 54-2.2, any objections to an Application to the Clerk to Tax Costs must include a representation that counsel met and conferred (or made a good faith effort to do so) in an attempt to resolve disagreements about the claimed costs. Here, Plaintiff's failure to serve the Application prevented Kumar from engaging in the required meet and confer process. Plaintiff cannot benefit from its own failure to follow the rules.

In addition to these procedural defects, Plaintiff's claimed costs are unsubstantiated. Plaintiff has submitted various invoices from third-party service providers, but these invoices alone do not establish that the claimed costs were actually incurred or paid by Plaintiff. As the party seeking costs, Plaintiff bears the burden of providing sufficient documentation to support its claim. See L.R. 54-2.1 (requiring "appropriate documentation" to verify costs). Mere invoices, without more, do not satisfy this burden.

Despite not receiving the Application from Plaintiff, Kumar has diligently attempted to contact the third-party companies identified in the invoices to confirm the genuineness of the invoices, the amounts claimed, and whether the invoiced services were actually provided to Plaintiff for this case. See Exhibit C. As of this filing, Kumar has not received any response or information from these companies to substantiate Plaintiff's claims. Id.

The Court should not award costs based on unverified invoices and Plaintiff's say-so alone, especially where Plaintiff has failed to comply with basic service and meet and confer requirements. The lack of supporting documentation, coupled with Plaintiff's procedural violations, requires denial of the Application to the Clerk to Tax Costs.

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

# X. THE COURT PROPERLY DENIED INJUNCTIVE RELIEF BASED ON THE RECORD

Plaintiff has not shown any manifest error in the Court's denial of injunctive relief. An injunction is an "extraordinary remedy" that requires a clear showing of irreparable harm, inadequacy of damages, and consideration of the balance of hardships and public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 22 (2008). Plaintiff failed to make this showing in its original motion for default judgment, and its belated attempt to do so now does not warrant disturbing the judgment.

The Court properly found that Plaintiff failed to provide evidence of irreparable harm or the inadequacy of damages. Plaintiff's generalized assertions about the impact of infringement on its business and the difficulty of quantifying damages are insufficient, as the Court recognized. See Herb Reed Enters., LLC v. Fla. Entm't Mgmt., Inc., 736 F.3d 1239, 1250 (9th Cir. 2013) Speculative injury cannot be the basis for a finding of irreparable harm. Plaintiff's effort to shore up its showing with new evidence of ongoing infringement does not establish any manifest error in the Court's original analysis on the record before it. In any event, as discussed above, Plaintiff's new evidence is disputed, contradictory, and unreliable.

Plaintiff's claim that it faces irreparable harm because users of goodporn.to can download and share videos is speculative and ignores the reality that any video posted on the internet, including on Plaintiff's own sites, can be downloaded and shared by users. The risk of unauthorized sharing is inherent in operating any website that hosts video content. Plaintiff has not shown that the potential for users to download videos from goodporn.to poses any unique or irreparable harm that is not already present with Plaintiff's own online distribution of its works.

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

The balance of hardships and public interest also weigh strongly against an injunction in this case. Kumar would suffer catastrophic harm if forced to turn over his entire website and domain name to Plaintiff, a punishment that is grossly disproportionate to his alleged infringement. Granting Plaintiff such an unjustified windfall would encourage other abusive litigation by copyright holders seeking to take over their competitors' websites. This would severely undermine the public interest in a fair and functioning Internet. See Garcia v. Google, Inc., 786 F.3d 733, 747 (9th Cir. 2015) (en banc) (injunction that censors and suppresses a politically significant film was "a classic prior restraint of speech" contrary to the public interest).

Plaintiff's request for a court order requiring third-party service providers to block access to goodporn.to is also improper and contrary to the public interest. Such an order would constitute an extraordinary prior restraint on speech, forcing service providers to censor a website before any final adjudication of infringement. This would set a dangerous precedent, as it would allow any copyright holder who merely alleges infringement to obtain a court order censoring online speech and restricting public access to information. The Supreme Court has repeatedly emphasized that such prior restraints are presumptively unconstitutional and subject to exacting scrutiny. See Nebraska Press Ass'n v. Stuart, 427 U.S. 539, 559 (1976) ("Prior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights.").

In sum, the Court soundly exercised its discretion in denying injunctive relief based on the record presented. Plaintiff's Motion does not come close to establishing any "extraordinary circumstances" necessary to revisit that determination.

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

# XI. THE COURT'S DAMAGES AND FEES AWARDS WERE WELL WITHIN ITS DISCRETION

Plaintiff also fails to show any manifest error in the Court's awards of statutory damages and attorneys' fees. The Court carefully considered the relevant factors and reached a reasonable judgment on both issues.

On damages, the Court properly declined to adopt Plaintiff's inflated demand for $15,000 per work, instead awarding a modest $1,500 per work based on the limited record. This reflected the Court's sound discretion to award damages within the statutory range based on the circumstances of the case. See Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984) (The court has the discretion to award between $250 and $10,000 for each act of infringement).

Plaintiff's comparison to damages awards in other cases is inapposite, as the Court must make an individualized assessment based on the facts before it. The cases Plaintiff cites involved default judgments where the plaintiffs' allegations were deemed admitted. Here, in contrast, Kumar has actively contested Plaintiff's claims and presented evidence challenging the extent of any infringement and damages. The Court properly took this into account in exercising its discretion to award a lower amount of statutory damages.

Plaintiff's conclusory assertions about the value of its works and the extent of its losses do not establish any clear error in the Court's reasoning. As discussed above, Plaintiff's evidence of damages is speculative and contradictory. The fact that Plaintiff creates its videos using minimal production costs and exploitative practices further undermines its claim to enhanced damages. The Court was well within its discretion to reject Plaintiff's exaggerated demands and award a more reasonable amount.

On fees, the Court reasonably awarded $46,760 under the Copyright Act and Local Rule 55-3. The Court properly weighed the relevant factors, including Plaintiff's degree of success, motivation, and the reasonableness of the amount sought. See Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994).

Although Plaintiff claims it is entitled to over $160,000 in fees under a lodestar analysis, its belated request to apply that methodology is improper, as it should have been raised before the judgment. In any event, Plaintiff's proffered lodestar is grossly excessive and unsupported by sufficiently detailed records, as required in the Ninth Circuit. See Chalmers v. City of Los Angeles, 796 F.2d 1205, 1210 (9th Cir. 1986).

Plaintiff's reliance on a single page from an AIPLA report to justify its exorbitant fee request is misplaced. The report provides a general survey of copyright litigation costs, but does not account for the specific circumstances of this case, including its straightforward nature. Plaintiff's attempt to portray this case as factually and legally complex is belied by the record. The Court acted well within its discretion to award a lower amount of fees that more appropriately reflects the work reasonably performed by Plaintiff's counsel.

In sum, nothing in Plaintiff's Motion warrants second-guessing the Court's careful damages and fees determinations. These awards were supported by the record and well within the Court's sound discretion. Plaintiff has not shown any of the "extraordinary circumstances" required to amend the judgment on these issues.

## XII. PLAINTIFF'S REQUESTED RELIEF AGAINST THIRD PARTIES IS IMPROPER

In addition to the other defects in Plaintiff's Motion, Plaintiff improperly seeks to expand the scope of the judgment to third parties who are not before the

Court. Specifically, Plaintiff asks the Court to issue orders directing domain registrars and CDN providers. to terminate services to goodporn.to and transfer the domain name to Plaintiff. Plaintiff also requests an order requiring search engines, web hosts, CDN providers, and other third-party service providers to block access to goodporn.to.

These requests are procedurally and substantively improper for several reasons. First, domain registrar, CDN provider, and the other third parties are not parties to this action. The Court cannot issue orders against non-parties over whom it has not acquired personal jurisdiction through proper service of process. See Zenith Radio Corp. v. Hazeltine Research, Inc., 395 U.S. 100, 110 (1969) ("It is elementary that one is not bound by a judgment in personam resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process.").

Second, even if the third parties were properly before the Court, Plaintiff has not shown any legal basis for the Court to order these entities to terminate services to goodporn.to or block access to the site. Plaintiff cites no authority allowing a court to compel a third-party service provider to take down a website or domain based on alleged copyright infringement. Such a sweeping order would raise significant concerns under Section 230 of the Communications Decency Act, which generally immunizes online service providers from liability based on user-generated content. See 47 U.S.C. § 230(c)(1).

Third, Plaintiff's request for orders blocking all access to goodporn.to is a blatant attempt to circumvent the DMCA's carefully balanced framework for addressing online copyright infringement. The DMCA provides a detailed process for copyright holders to notify service providers of alleged infringement and request removal of infringing material. See 17 U.S.C. § 512. This process includes

safeguards to protect legitimate speech and allow for counter-notification by accused infringers. Plaintiff is essentially asking the Court to bypass these procedures and give it the unilateral power to censor an entire website without any of the DMCA's built-in checks and balances. This would undermine the statutory scheme that Congress enacted to address these very issues.

Fourth, Plaintiff's requested orders would threaten the functioning of the Internet by putting service providers in the untenable position of having to automatically comply with any court order alleging copyright infringement, even if the order is legally defective or targets protected speech. This would drastically chill online expression and innovation, as service providers would have to err on the side of over-censoring user content and websites to avoid potential liability. The result would be a fractured and Balkanized Internet, where service providers limit access to websites based on piecemeal court orders rather than uniform legal standards.

Finally, the overbreadth of Plaintiff's requested relief confirms that this case is not really about redressing specific acts of copyright infringement, but rather about eliminating a competitor through misuse of the judicial process. Plaintiff is seeking to conscript the Court into its anti-competitive campaign to take down a rival website. The Court should reject this blatant attempt to hijack the litigation for improper purposes.

In sum, Plaintiff's far-reaching requests for orders against third-party service providers are both procedurally improper and substantively indefensible. The Court lacks personal jurisdiction over the third parties, and Plaintiff has shown no legal basis for the relief it seeks. Plaintiff's attempt to use this copyright case as a vehicle to censor an entire website and commandeer its domain name is a serious

overreach that would undermine the DMCA, threaten Internet freedom, and stifle competition. The Court should reject these requests out of hand.

## XIII. REQUEST FOR REMOTE HEARING

If the Court decides to hold a hearing on Plaintiff's Motion, Kumar respectfully requests that the hearing be conducted remotely via videoconference or telephonic means pursuant to Federal Rule of Civil Procedure 43(a). As an Indian national residing in India, Kumar faces significant challenges in obtaining a visa to travel to the United States, making it extremely difficult for him to attend an in-person hearing. Remote proceedings would ensure Kumar's full and fair participation without prejudicing any party. Moreover, Kumar believes that written submissions are the most reliable and effective way for him to present his arguments and evidence to the Court, given the potential for technical difficulties or language barriers during a live hearing. Kumar respectfully requests that any hearing be conducted through remote means.

## XIV. CONCLUSION

For the foregoing reasons, Defendant Amrit Kumar respectfully requests that the Court deny Plaintiff's Motion to Alter or Amend the Default Judgment. Plaintiff has failed to comply with meet and confer requirements, failed to properly serve Kumar, and failed to show any manifest error, newly discovered evidence, or other grounds for disturbing the judgment under Rule 59(e) or Local Rule 7-18. The Court properly denied injunctive relief, awarded reasonable statutory damages and fees, and rejected Plaintiff's overreaching demand to seize Kumar's domain name and conscript third-party service providers into enforcing the judgment. Plaintiff's belated and procedurally improper attempt to relitigate these issues and

introduce new evidence does not warrant the extraordinary remedy of amending the judgment.

Kumar has diligently complied with the judgment by removing the infringing content and taking all possible steps to pay the amounts owed. Plaintiff's false accusations of contempt and unsubstantiated claims of irreparable harm do not justify any modification of the judgment in Plaintiff's favor.

Plaintiff's Motion also ignores the grave problems with its own evidence and theories of liability. Plaintiff's declarations are rife with contradictions, unsupported speculation, and irrelevant self-promotion. Plaintiff's exhibits fail to concretely establish any new infringement beyond what was previously alleged. And Plaintiff's ever-shifting damages calculations are based on unrealistic assumptions and unreliable third-party data. The Court correctly found this showing insufficient to support the vast relief Plaintiff seeks.

Furthermore, Plaintiff's unclean hands permeate every aspect of its Motion. Plaintiff has a well-documented history of abusive litigation tactics, coercive business practices, and disregard for the rule of law. Plaintiff's bad faith conduct in this case - including its counsel's misconduct in refusing to provide payment information and subjecting Kumar to harassing emails - further undermines the credibility of its arguments. The Court should not reward Plaintiff's vexatious behavior by expanding the judgment in its favor.

At its core, Plaintiff's Motion is a transparent attempt to misuse the judicial process to destroy a competitor and seize its valuable domain name. The relief Plaintiff seeks - including the extraordinary demand to conscript third-party service providers into blocking all access to Kumar's website - finds no support in copyright law and would set a dangerous precedent undermining Internet freedom and the DMCA's carefully balanced framework. Granting Plaintiff such an

unjustified windfall would only encourage more abusive litigation and threaten the functioning of the Internet.

The Court has already given Plaintiff a full and fair opportunity to prove its case and obtain appropriate relief. Plaintiff failed to make the showing necessary to support the sweeping remedies it requested. The Court's judgment was well-reasoned and fully supported by the record. Plaintiff's Motion does not come close to demonstrating the kind of extraordinary circumstances that would warrant disturbing that judgment.

This case should be brought to a close, not reopened for a new round of overreaching claims and unwarranted remedies. The Court should reject Plaintiff's improper attempt to prolong this litigation and expand the judgment beyond what the law and facts support. Kumar respectfully submits that the Court should deny the Motion in its entirety and allow its original judgment to stand.


Dated: March 11, 2024

Respectfully submitted,

Amrit Kumar

Pro Se Defendant


## STATEMENT OF TIMELY FILING

Pursuant to L.R. 7-9, I, Amrit Kumar, hereby affirm that this document, titled "Defendant Amrit Kumar's Opposition to Plaintiff's Motion to Alter or Amend the Default Judgment," is being filed timely in accordance with the court's deadlines. This filing is submitted through the Electronic Document Submission System (EDSS) on March 11, 2024, well within the twenty-one (21) days before the hearing date of April 1, 2024, as required for the hearing of the motion.

I further note that, as per the EDSS guidelines, the date of submission through EDSS should be considered the filing date for this document. Any delay in the document being uploaded into CM/ECF by court staff does not alter the timeliness of this submission, which complies fully with the court's scheduling and local rules.

Dated: March 11, 2024

/s/ Amrit Kumar
AMRIT KUMAR

## DECLARATION

I declare under penalty of perjury under the laws of the United States of America that the foregoing responses are true and correct to the best of my knowledge and belief.

Dated: March 11, 2024

/s/ Amrit Kumar
AMRIT KUMAR

## CERTIFICATE OF SERVICE

I hereby certify that on 03/11/2024, copies of the foregoing document have been sent to all the parties at the following addresses:

KARISH & BJORUGM, PC
A. ERIC BJORGUM
Eric.bjorgum@kb-ip.com

27

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

MARC KARISH
Marc.karish@kb-ip.com
119 E. Union Street, Suite B
Pasadena, CA 91103

Emilie Brunn
Emilie.brunn@protonmail.com

Lizette Lundberg
Liz.lundberg@protonmail.ch

Dated: March 11, 2024

/s/ Amrit Kumar

AMRIT KUMAR

601 6th Floor, Rupa Solitare

Millennium Business Park, Plot No. A-1

Mahape, Mumbai

Maharashtra-400710, India

Email: amritkum@proton.me

## CERTIFICATE OF COMPLIANCE

Pursuant to L.R. 11-6.2, I, Amrit Kumar, as an unrepresented party, certify that this document titled "Defendant Amrit Kumar's Opposition to Plaintiff's Motion to Alter or Amend the Default Judgment" contains 6,965 words, which complies with the word limit of L.R. 11-6.1. I have relied on the word count of the word-processing system used to prepare this document.

1

2  Dated: March 11, 2024

3                                               /s/ Amrit Kumar

4                                               AMRIT KUMAR

5                                          601 6th Floor, Rupa Solitare

6                              Millennium Business Park, Plot No. A-1

7                                               Mahape, Mumbai

8                                          Maharashtra-400710, India

9                                     Email: amritkum@proton.me

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Amrit Kumar's Opposition To Plaintiff's Motion To Alter Or Amend The Default Judgment

# Exhibit A



Proton Mail
New message
Inbox
1852
Drafts
Sent
Starred
Less
Archive
Spam
Trash
All mail
1852
Folders
No folders
Labels
Search messages
Upgrade
AK
Inbox
All
1/45
DMCA Copyright Infringement Notice (#24031112529009goodpornto)
D
dmca_bigz@aylopremiumltd.com
11:42 AM
DMCA Copyright Infringement Notice (#24031111428351goodpornto)
D
dmca_bigz@aylopremiumltd.com
10:36 AM
DMCA Copyright Infringement Notice (#24031110362686goodpornse)
D
dmca_bigz@aylopremiumltd.com
10:04 AM
DMCA Copyright Infringement Notice (#24031110048847goodpornto)
D
dmca_bigz@aylopremiumltd.com
9:27 AM
DMCA Copyright Infringement Notice (#24031109275208goodpornto)
D
dmca@aylopremiumltd.com
8:17 AM
DMCA Copyright Infringement Notice (#24031108172229goodpornse)
D
dmca@aylopremiumltd.com
8:06 AM
DMCA Copyright Infringement Notice (#24031108067319goodpornse)
D
dmca@aylopremiumltd.com
7:42 AM
DMCA Copyright Infringement Notice (#24031107429448goodpornto)
D
dmca_bigz@aylopremiumltd.com
7:30 AM
DMCA Copyright Infringement Notice (#24031107306643goodpornto)
D
dmca_bigz@aylopremiumltd.com
7:09 AM

## Re: DMCA Copyright Infringement Notice (#24022808506294goodpornto)

| | |
|---|---|
| From | amritkum@proton.me <amritkum@proton.me> |
| To | dmca_bigz@aylopremiumltd.com |
| Date | Wednesday, February 28th, 2024 at 10:37 AM |

Dear Adam D'Ambrosio — DMCA Agent for Aylo Premium Ltd.,

You are incorrectly sending takedown notices to my email. The correct procedure is clearly outlined on Goodporn.to under the "Content Removal" section for submitting copyright takedown notices. It's imperative that you follow this designated process.

Your current approach is making my email account unusable by flooding it with hundreds of spam. This is unacceptable, as it jeopardizes my ability to receive and respond to critical communications, including important current court-related emails.

It is common knowledge that platforms, including your own at Pornhub.com, have specific mechanisms in place for these matters. At Goodporn.to, there is a visible link for content removal at the bottom of every page of the site. Ignoring this established protocol cannot be seen as anything but deliberate.

The excessive number of emails you're sending is construed as an attempt to sabotage my ability to respond to legal obligations in a timely manner. This behavior must cease. Right now, my email has become dysfunctional because it is impractical going through hundreds of emails to find the one which is important. I demand that you retract your emails from my inbox to restore its functionality, ensuring I can maintain necessary communication, especially concerning legal matters.

Immediate action on your part is expected. Please reply back and explain the steps you are taking to clean up my email box, which is filled with your spam.

Sincerely,

Amrit Kumar

## Re: DMCA Copyright Infringement Notice (#24030216531840goodpornto)

From     amritkum@proton.me <amritkum@proton.me>

To       dmca_bigz@aylopremiumltd.com

Date     Saturday, March 2nd, 2024 at 9:15 PM

Dear Adam D'Ambrosio — DMCA Agent for Aylo Premium Ltd.,

You are incorrectly sending takedown notices to my email. The correct procedure is clearly outlined on Goodporn.to under the "Content Removal" section for submitting copyright takedown notices. It's imperative that you follow this designated process.

Your current approach is making my email account unusable by flooding it with hundreds of spam. This is unacceptable, as it jeopardizes my ability to receive and respond to critical communications, including important current court-related emails.

It is common knowledge that platforms, including your own at Pornhub.com, have specific mechanisms in place for these matters. At Goodporn.to, there is a visible link for content removal at the bottom of every page of the site. Ignoring this established protocol cannot be seen as anything but deliberate.

The excessive number of emails you're sending is construed as an attempt to sabotage my ability to respond to legal obligations in a timely manner. This behavior must cease. Right now, my email has become dysfunctional because it is impractical going through hundreds of emails to find the one which is important. I demand that you retract your emails from my inbox to restore its functionality, ensuring I can maintain necessary communication, especially concerning legal matters.

Immediate action on your part is expected. Please reply back and explain the steps you are taking to clean up my email box, which is filled with your spam.

Sincerely,

Amrit Kumar

# Exhibit B





# Exhibit C

## Request for Invoice Verification - First Legal Network LLC Invoice

| | |
|---|---|
| From | amritkum@proton.me <amritkum@proton.me> |
| To | clientcare@firstlegal.com |
| Date | Monday, March 11th, 2024 at 6:20 PM |

Dear First Legal Network LLC,

I am the defendant in a legal case involving MG Premium Ltd (Case No. 2:21-cv-08533-MCS-SP in the United States District Court for the Central District of California). MG Premium Ltd has submitted an invoice from your company as part of its request for costs in this case. The invoice details are as follows:

Please check the attached documents and invoices.

To assist me in evaluating the accuracy and applicability of these claimed costs, I kindly request that you provide me with the following information:

1. Please confirm whether these invoices are genuine and was issued by your company.

2. Please verify whether MG Premium Ltd or their counsel KARISH & BJORGUM, PC has paid the amount listed on the invoice.

3. Please confirm whether the services provided were specifically in relation to the legal case mentioned above (MG Premium Ltd v. John Does 1-20 d/b/a Goodporn.to, Case No. 2:21-cv-08533-MCS-SP).

I would greatly appreciate your prompt response to this request, as the information you provide will be crucial in ensuring a fair and accurate assessment of costs in this legal matter. If you have any questions or require additional details, please do not hesitate to contact me.

Thank you for your assistance in this important matter.

Sincerely,

Amrit Kumar

---

**940.79 KB**   3 files attached

Exhibit Expense report for all case costs.pdf 75.52 KB

APPLICATION-TO-THE-CLERK-TO-TAX-COSTS.pdf 235.62 KB

Exhibit Receipts for Costs Claimed.pdf 629.65 KB

# Request for Invoice Verification - Veritext, LLC Invoice

| | |
|---|---|
| From | amritkum@proton.me <amritkum@proton.me> |
| To | clientservices-abi@veritext.com |
| Date | Monday, March 11th, 2024 at 6:27 PM |

Dear Veritext, LLC,

I am the defendant in a legal case involving MG Premium Ltd (Case No. 2:21-cv-08533-MCS-SP in the United States District Court for the Central District of California). MG Premium Ltd has submitted an invoice from your company as part of its request for costs in this case. The invoice details are as follows:

Please check the attached documents and invoices.

To assist me in evaluating the accuracy and applicability of these claimed costs, I kindly request that you provide me with the following information:

1. Please confirm whether these invoices are genuine and was issued by your company.

2. Please verify whether MG Premium Ltd or their counsel KARISH & BJORGUM, PC has paid the amount listed on the invoice.

3. Please confirm whether the services provided were specifically in relation to the legal case mentioned above (MG Premium Ltd v. John Does 1-20 d/b/a Goodporn.to, Case No. 2:21-cv-08533-MCS-SP).

I would greatly appreciate your prompt response to this request, as the information you provide will be crucial in ensuring a fair and accurate assessment of costs in this legal matter. If you have any questions or require additional details, please do not hesitate to contact me.

Thank you for your assistance in this important matter.

Sincerely,

Amrit Kumar

---

**940.79 KB**   3 files attached

Exhibit Expense report for all case costs.pdf 75.52 KB

APPLICATION-TO-THE-CLERK-TO-TAX-COSTS.pdf 235.62 KB

Exhibit Receipts for Costs Claimed.pdf 629.65 KB

# Exhibit B

**JS-6**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

MG PREMIUM LTD, a limited
liability company organized under the
laws of the Republic of Cyprus,

               Plaintiff,

       v.

JOHN DOES 4–20, d/b/a
GOODPORN.TO; AMRIT KUMAR,
an individual; LIZETTE LUNDBERG,
an individual; and EMILIE BRUNN,
an individual,

              Defendants.

Case No. 2:21-cv-08533-MCS-SP

**JUDGMENT**

1    Pursuant to the Court's orders, it is ordered, adjudged, and decreed:

2    1.    Judgment is entered in favor of MG Premium Ltd. and against Amrit
3    Kumar, Lizette Lundberg, and Emilie Brunn on MG Premium's claims. Judgment is
4    entered in favor of MG Premium Ltd. and against Lizette Lundberg and Amrit Kumar
5    on Lundberg and Kumar's counterclaims.

6    2.    MG Premium Ltd. shall recover from Amrit Kumar statutory damages in
7    the sum of $2,157,000.

8    3.    Plaintiff MG Premium Ltd. is the owner of all the works identified in
9    Exhibit A to the First Amended Complaint.

10   4.    Amrit Kumar, Lizette Lundberg, and Emilie Brunn have no rights by virtue
11   of the "Bilateral Agreement" Kumar first identified in his Motion to Dismiss the
12   Complaint and again identified in his Answer to the First Amended Complaint.

13   5.    Amrit Kumar, Lizette Lundberg, and Emilie Brunn shall pay to MG
14   Premium Ltd. attorney's fees in the sum of $46,740. As prevailing party, MG Premium
15   is entitled to recover its costs of suit.

16   6.    MG Premium Ltd. is entitled to recover postjudgment interest at the rate
17   prescribed by 28 U.S.C. § 1961(a).

18

19   **IT IS SO ORDERED.**

20

21   Dated: February 9, 2024

_____
MARK C. SCARSI
UNITED STATES DISTRICT JUDGE

# Exhibit C

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES – GENERAL

| Case No. | **21-cv-08533-MCS-SP** | Date | January 16, 2024 |
|---|---|---|---|
| Title | ***MG Premium Ltd. v. Does d/b/a GoodPorn.to*** | | |

Present: The Honorable     Mark C. Scarsi, United States District Judge

| Stephen Montes Kerr | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER DENYING EX PARTE APPLICATION (ECF NO. 252)**

    Defendant Amrit Kumar applies ex parte for the Court to vacate the default ordered at the November 27, 2023, final pretrial hearing and entered by the Clerk.[1] (Appl., ECF No. 252;[2] *see* Mins., ECF No. 233; Default, ECF No. 234.) Plaintiff MG Premium Ltd. timely opposed the application. (Opp'n, ECF No. 253.)

---

[1] Defendant styles his application as an application to set aside "default judgment." (Appl. 1) As the Court has not entered a default judgment, the Court construes the application as one seeking to set aside default under Federal Rule of Civil Procedure 55(c).

[2] The application was erroneously filed twice to the electronic case file. The Court directs the Clerk to terminate the application filed at ECF No. 254.

## I.      ANALYSIS

### A.      The Court Retains Jurisdiction

Defendant has filed a notice of appeal. (Notice of Appeal, ECF No. 238.) "The general rule is that once a notice of appeal has been filed the district court is divested of jurisdiction over the matters being appealed," but "divestiture is not absolute; there are exceptions." *United States v. Phelps*, 283 F.3d 1176, 1181 n.5 (9th Cir. 2002). "Where the deficiency in a notice of appeal, by reason of untimeliness, lack of essential recitals, or reference to a non-appealable order, is clear to the district court, it may disregard the purported notice of appeal and proceed with the case, knowing that it has not been deprived of jurisdiction." *Ruby v. Sec'y of U.S. Navy*, 365 F.2d 385, 389 (9th Cir. 1966).

The Court finds that the appeal is fundamentally flawed. Plaintiff appeals an unappealable interlocutory order. "Parties may only appeal 'final decisions of the district courts.'" *Am. States Ins. Co. v. Dastar Corp.*, 318 F.3d 881, 884 (9th Cir. 2003) (quoting 28 U.S.C. § 1291)). "Final decisions" are those that "end the litigation on the merits and leave nothing for the court to do but execute the judgment." *Id.* (cleaned up). The appealed order on an ex parte application is not a final decision. (*See* Order Re: Ex Parte Appl. 1, 3, ECF No. 222 (denying application for reconsideration of summary judgment determination, which itself was not a final decision).) Nor is the order appealable under 28 U.S.C. § 1292. The Court has not certified the order for interlocutory appeal and declines to do so at this time because, among other considerations, an immediate appeal would not "materially advance the ultimate termination of the litigation." 28 U.S.C. § 1291(b). The appeal is not taken in good faith because the appellate court lacks jurisdiction to consider it. *See* 28 U.S.C. §§ 1291, 1291(b); *Javor v. Brown*, 295 F.2d 60, 61 (9th Cir. 1961) ("If it appears from the record that the order sought to be reviewed is not appealable, the conclusion is warranted that the appeal is not taken in good faith."). As a result, the Court "disregard[s] the purported notice of appeal and proceed[s] with the case, knowing that it has not been deprived of jurisdiction. *Ruby*, 365 F.2d at 389.

### B.      Ex Parte Relief Is Not Warranted

The Court denies the application on two independent grounds. First, Defendant fails to present cause for ex parte relief. Ex parte applications are solely for extraordinary relief and are rarely justified. *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 490 (C.D. Cal. 1995). A party filing an ex parte

application must support its request for emergency relief with "evidence . . . that the moving party's case will be irreparably prejudiced if the underlying motion is heard according to regularly noticed motion procedures," and a showing "that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect." *Id.* at 492.

Defendant fails to show that he is without fault in creating whatever crisis exists. Clearly, Defendant requests relief from a situation he put himself in. *First*, Defendant argues that visa restrictions prevented him from being present for the final pretrial conference. (Appl. 6–7.) But Defendant has been aware of the date for the final pretrial conference since February 22, 2023, (Order Re: Jury Trial § I, ECF No. 71), and aware that he may need to travel to the United States for this proceeding since at latest October 21, 2022, (*see* MTD 20–21, ECF No. 37 (noting Defendant may be subject to "multiple instances requiring personal appearances"); MTD Order 9–10, ECF No. 46). Yet Plaintiff's application includes no detail about what Plaintiff has done to facilitate entry into the United States. (*See* Appl. 6–7.)

*Further*, Defendant argues that he lacks understanding of the American legal system as a pro se litigant thereby causing his default. (*Id.* at 7.) While courts have a duty to ensure that pro se litigants do not lose their rights to a merits-based decision due to "ignorance of technical procedural requirements," *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988), "pro se litigants are bound by the rules of procedure," *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). And, as detailed below, Plaintiff has been given multiple opportunities to follow the rules of procedure and the orders of this court.

*Finally*, Defendant's application does not address an independent reason supporting entry of default against him, his repeated failures to comply with the Court's order requiring meeting and conferring, appearing for his deposition, and paying monetary sanctions. (*See* R. & R., ECF No. 210; Amended Order Accepting Findings & Recommendation, ECF No. 269.)[3] On February 7, 2023, Plaintiff noticed Defendant's deposition to occur by video on February 21, 2023, at 6:30 p.m. Pacific time. (R. & R. 2.) Defendant failed to respond, and Plaintiff canceled the deposition.

---

[3] The Court adopted the recommendation of the Magistrate Judge after Defendant filed the instant application, so his failure to address the recommendation in his papers is understandable. Regardless, the conduct for which the Court adopted the Magistrate Judge's recommendation of a default sanction is probative of whether ex parte relief is appropriate and whether default should be set aside.

(*Id.*) Plaintiff again noticed Defendant's deposition, this time for March 2, 2023, at 6:30 p.m. Pacific time. (*Id.* at 2–3.) Defendant again failed to appear. (*Id.* at 3.) Thereafter, Plaintiff filed a motion to compel. The Court ordered Defendant to meet and confer with Plaintiff to settle on a date for a deposition to take place no later than June 28, 2023, and to appear on said date. (*Id.*) The Court also ordered Defendant to pay $4,287.25 in sanctions. (*Id.*) The parties agreed to hold the deposition on June 27, 2023, at 3:30 a.m. Pacific time. (*Id.*)

At that time, Plaintiff's counsel, a court reporter, a videographer, a Hindi translator, and Plaintiff's representatives appeared. (*Id.* at 4.) Defendant did not. (*Id.*) That evening, Plaintiff's counsel, the court reporter, videographer, and Plaintiff's representatives reconvened to call Defendant to resolve any of Defendant's technical issues. (*Id.*) Plaintiff's Hindi translator was ready for a call at 9:00 p.m. Pacific time—9:30 a.m. India time on June 28, 2023. (*Id.*) Plaintiff's counsel sent Defendants two emails scheduling the call and requesting confirmation, but Defendant did not respond. (*Id.*) That same day, Plaintiff noticed another deposition of Defendant to take place June 28, 2023, at 3:00 a.m. Pacific time. (*Id.*) Defendant again failed to appear. (*Id.* at 5.)

On September 20, 2023, the magistrate judge, "[i]n light of defendant Kumar's alleged technical difficulties and his representation that he is amenable to continu[ing] the deposition to a later date that would allow[] sufficient time for the technical issues to be fully addressed and resolved," issued an order requiring Defendant to appear for deposition by video no later than October 4, 2023. (*Id.* (alterations in original) (internal quotation marks omitted).) The magistrate judge also ordered Defendant "to resolve any technical issues in advance" of the deposition. (*Id.*) The magistrate judge "expressly warned [Defendant] that if he fails to appear for his deposition by October 4, 2023," the magistrate judge would recommend granting terminating sanctions. (*Id.* at 5–6 (internal quotation marks omitted).)

On September 24, 2023, Defendant offered to appear for his deposition on October 2, 2023, at 2:00 a.m. Pacific time, and Plaintiff agreed. (*Id.* at 6.) But five days later, Defendant stated that he continued to have technical issues. (*Id.*) Plaintiff offered a Hindi translator to assist with the troubleshooting efforts, but it is unclear whether Defendant ever participated in a troubleshooting call. (*Id.*)

On October 2, 2023, at 2:00 a.m. Pacific time, Plaintiff's counsel, the court reporter, videographer, translator, Plaintiff's representative, and an investigator

appeared for Defendant's deposition. (*Id.* at 6–7.) While the Veritext software showed that Defendant had logged into the conference, no audio or video was connected. (*Id.* at 7.) Plaintiff's counsel emailed Defendant call-in numbers, and Plaintiff's translator attempted to call Defendant, but Defendant did not dial in. (*Id.*) Ultimately, Defendant again did not appear. (*Id.*) Further, as of October 10, 2023, Defendant has not paid any monetary sanctions. (*Id.*)

This page-long recitation of months of Defendant's failure to abide by the Court's orders clearly shows that Defendant is at fault in creating any crisis he finds himself in as to the independent ground for entry of default against him. On these bases, the ex parte application is denied.

### C.    Defendant's Argument Fails on the Merits

Even if the Court considered the application on its merits, Defendant has failed to carry his burden. A court may set aside entry of default for good cause. Fed. R. Civ. P. 55(c). Courts evaluate three factors: (1) whether the defaulting party engaged in culpable conduct that led to the default, (2) whether the defaulting party has a meritorious defense, and (3) whether setting aside default would prejudice the plaintiff. A court may decline to set aside default if any factor is present. *Brandt v. Am. Bankers Ins. Co. of Fl.*, 653 F.3d 1108, 1111 (9th Cir. 2011). These factors are disjunctive, so the court will not abuse its discretion if any factor is met. *Franchise Holding II, LLC v. Huntington Rests. Grp., Inc.*, 375 F.3d 922, 926 (9th Cir. 2004). The defaulted party carries the burden to show good cause. *See id.*

As detailed above, the record is replete with Defendant's culpable conduct resulting in his default. His default itself was entered as a sanction. (*See generally* Order Accepting Findings & Recommendation.) On this ground, the Court denies the application. *See, e.g.*, *S. Cal. Housing Rts. Ctr. v. Snow*, No. CV-05-4644-SGL(JTLX), 2006 WL 3903736, at *2 (C.D. Cal. Nov. 27, 2006) (denying motion to vacate default entered as a terminating sanction).

Further, Defendant has no meritorious defense. Throughout this litigation, he had relied only on a purported bilateral agreement, which the Court has already ruled does not bear "any indicia or reliability or authenticity sufficient to cast doubt on [Plaintiff's] ownership of the copyrights." (MSJ Order 7, ECF No. 195; *see also* Order Re: Ex Parte Appl. 3, ECF No. 222.)

Finally, vacating default would prejudice Plaintiff, forcing it to revisit discovery and litigation that Defendant has already frustrated. *Cf. Heeling Sports Ltd. v. U.S. Furong Int'l Inc.*, No. 06-cv-07624-FMC-PLAx, 2008 WL 11338022, at *3 (C.D. Cal. May 27, 2008) (declining to vacate default after preliminary injunction and damages discovery when defendants did nothing until learning plaintiff's desired damages).

## II. CONCLUSION

For the reasons stated above, the Court denies Defendant's ex parte application.

**IT IS SO ORDERED.**

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 3, 2024, I electronically filed the foregoing Opposition to Motion to Proceed In Forma Pauperis with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit using the Court's CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ A. Eric Bjorgum
A. Eric Bjorgum